UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STAMATIA KOSTOPOULOS,

      Plaintiff,

v.                                                                                   Case No. 14-12923

ONEWEST BANK, FSB, and                                    HON. AVERN COHN
FINANCIAL FREEDOM ACQUISITION,
LLC f/k/a Freedom Senior Funding Corporation.

      Defendants.
_____/

**MEMORANDUM AND ORDER**
**DENYING DEFENDANTS' MOTION TO DISMISS (Doc. 5)**

**I.  Introduction**

      This is a consumer lending case.  Plaintiff Stamatia Kostopoulos is suing

defendants Onewest Bank, FSB, and Financial Freedom Acquisition, LLC f/k/a/

Financial Freedom Senior Funding Corporation essentially claiming breach of a

mortgage contract resulting in the filing of wrongful foreclosure proceedings.

      Before the Court is defendants' motion to dismiss.  For the reasons that follow,

the motion will be denied.

**II.  Background**

      This case concerns real property located at 31341 Frank Drive, Warren Michigan

48093.  Plaintiff and her husband, now deceased, have owed and occupied the property

since 1974.  On September 28, 2006, plaintiff's husband, Konnstantinos Kostopoulos,

signed an adjustable rate note in connection with a home equity conversion mortgage loan ("HECM"), which is commonly known as a "reverse mortgage."  The loan was insured by the Department of Housing and Urban Development (HUD).  The lender is identified in the note and mortgage as "Financial Freedom Senior Funding Corporation, a Subsidiary of IndyMac Bank, FSB."  Defendant OneWest Bank later acquired IndyMac's reverse mortgage portfolio.  Under the terms of the loan and mortgage, the lender agreed to make advances to plaintiff and her husband in the maximum principal amount of $277,500.

Plaintiff did not sign the note.  Section 1 of the Note reads:  "Borrower means each person signing at the end of this Note."  However, plaintiff and her husband both signed the mortgage[1] and are identified as "Borrowers" on the mortgage.

Although the obligation under the note was not due and payable until January 26, 2076, both the note and the mortgage contain similar provisions as to when the lender may accelerate the obligation and demand payment in full.  The note says:

**7.  IMMEDIATE PAYMENT IN FULL**
**(A) Death or Sale**
Lender may require immediate payment in full of all outstanding principal and accrued interest if:
(I) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower[.]

**(B) Other Grounds.**
Lender may require immediate payment in full of all outstanding principal and

[1]Plaintiff's name is handwritten on the facing page of the mortgage and below her signature on the last page of the mortgage.  Plaintiff's name also did not appear on the original executed copy of the mortgage.  Defendants contend that plaintiff's name was added after execution and prior to recording.  Defendants speculate that the title company added plaintiff's name.  There is no dispute that plaintiff's signature is genuine or that she pledged her interest in the property as security for the note.

2

accrued interest, upon approval by an authorized representative of the Secretary, if:
(I) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower.

The mortgage states:

**9. Grounds for Acceleration of debt**
**(a) Due and Payable**.  Lender may require immediate payment in full of all sums secured by the is Security Instrument if:
(I) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower;

**(b) Due and Payable with Secretary Approval**.  Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if;
(I) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least  one Borrower.

Section 20 of the mortgage provides:

**Foreclosure Procedure.  If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. . . .**

Plaintiff's husband passed away in February, 2012.  Plaintiff says she has continued to use the property as her principal residence since her husband's death and further says that she has paid all taxes and insurance on the property.  These assertions are not challenged.

On May 15, 2014, plaintiff was notified by a law firm that they represented the lender.  The letter stated that the "matter was referred to this office to foreclose the mortgage" and contained a demand of $171,767.73.  A foreclosure sale was scheduled for June 20, 2014; it was adjourned until July 11, 2014.  On July 2, 2014, plaintiff filed a complaint in state court challenging the foreclosure.

On July 25, 2014, defendants removed the case to federal court on the grounds of diversity jurisdiction.

The parties have twice stipulated to adjourn the sale.  See Docs. 2, 9.

Defendants then filed the instant motion to dismiss.

### III.  Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  A complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007).  "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The court is "not bound to accept as true a legal conclusion couched as a factual allegation."  Id. (internal quotation marks and citation omitted).

Moreover, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. at 679.  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  Id (internal quotation marks and citation omitted).  Thus, "a court considering a motion to

4

dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id.  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  Id. at 678 (internal quotation marks and citation omitted).

In ruling on a motion to dismiss, the Court may consider the complaint as well as (1) documents referenced in the pleadings and central to plaintiff's claims, (2) matters of which a court may properly take notice, (3) public documents, and (4) letter decisions of government agencies.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S.Ct. 2499, 2509 (2007).  Here, the Court has considered documents relating to the mortgage and foreclosure which are referenced in the complaint and central to plaintiff's claims.

IV.  Analysis

A.

Before analyzing defendant's argument, it is important to describe a reverse mortgage that is insured by HUD.  As one court explained:

> A "reverse mortgage" is a form of equity release in which a mortgage lender (typically, a bank) makes payments to a borrower based on the borrower's accumulated equity in his or her home.  Unlike a traditional mortgage, in which the borrower receives a lump sum and steadily repays the balance over time, the borrower in a reverse mortgage receives periodic payments (or a lump sum) and need not repay the outstanding loan balance until certain triggering events occur (like the death of the borrower or the sale of the home).  Because repayment can

5

usually be deferred until death, reverse mortgages function as a means for elderly homeowners to receive funds based on their home equity.

Reverse mortgages are generally non-recourse loans, meaning that if a borrower fails to repay the loan when due, and if the sale of the home is insufficient to cover the balance, then the lender has no recourse to any of the borrower's other assets. This feature is, of course, favorable to borrowers but introduces significant risk for lenders—if regular disbursements are chosen, they can continue until the death of the borrower (like a life annuity), and the loan balance will increase over time, making it less and less likely that the borrower will be able to cover the full amount. If a borrower lives substantially longer than expected, lenders could face a major loss.

Congress, concerned that this risk was deterring lenders from offering reverse mortgages, authorized HUD to administer a mortgage-insurance program, which would provide assurance to lenders that, if certain conditions were met, HUD would provide compensation for any outstanding balance not repaid by the borrower or covered by the sale of the home. The Housing and Community Development Act of 1987 set out those conditions. . . .

Bennett v. Donovan, 703 F.3d 582, 584-85 (D.C. Cir. 2013).

B.

Defendants argue that because plaintiff did not sign the note, she is not a "borrower" and therefore defendants have the right to foreclosure because there is no "borrower" or "surviving borrower" residing at the property. As such, they contend that the complaint does not present a plausible claim challenging the foreclosure.

Defendants' argument does not carry the day. Although plaintiff did not sign the note, she signed the mortgage. In seeking foreclosure, defendants concede they are acting pursuant to the authority granted by the mortgage, not the note. Plaintiff is a "borrower" under the mortgage. Defendants would have the Court ignore the mortgage altogether. However, it is the mortgage that gives the defendants the right to foreclose in the event of a default. Accepting defendants' argument, plaintiff would have been in a better position had she signed the note and therefore become personally liable for the

6

debt.  Following defendants' logic, plaintiff would not be faced with foreclosure in this case.  From defendants' perspective, because plaintiff did not sign the note and survived her husband, she is faced with losing her home.  This simply cannot be the case.

## C.

At the very least, plaintiff has plead a plausible claim for relief based on her signature on the mortgage.  As the Court reads the note and mortgage, any right to demand immediate payment (and foreclose if payment is not made) would have to come from the provisions which require approval by the Secretary because plaintiff is a borrower under the mortgage.  These provisions allow for a demand if the borrower does not reside at the property for reasons other than death and the property is not the principal residence of at least one other borrower.  Neither of these circumstances is alleged.  As the Court sees it, defendants foreclosed on the mortgage in a circumstance where there has been no default.

## D.

Moreover, defendants state that the issue of a surviving spouse who does not sign the note being foreclosed upon "is neither new or novel, and has already been addressed in this District and by the United States Court of Appeals for the Sixth Circuit."  The two cases defendants cite do not support this bald assertion.

Defendants first cite Durrell v. Fannie Mae, No. 12-11510, 2013 U. S. Dist. LEXIS 11485 (E.D. Mich. Jan. 29, 2013).  In Durrell, defendants sought to foreclose on a reverse mortgage which had been signed by both spouses and a promissory note signed only by the deceased husband.  The surviving spouse, Mrs. Durrell, sued

challenging the foreclosure.  At the time the lawsuit was filed, the foreclosure had already taken place and the redemption period expired.  The district court dismissed because the redemption period had expired and plaintiff had not sufficiently alleged fraud or irregularity.  Indeed, the plaintiff in <u>Durrell</u> affirmatively stated that she was not pleading fraud.  The defendants in <u>Durrell</u> did not argue, as defendants do here, that the foreclosure was proper because the plaintiff was not a borrower.  Rather, defendants argued the plaintiff lacked standing to challenge the foreclosure.  Thus, the district court did not consider the issue raised by the complaint in this case.

Moreover, there are other factual differences in <u>Durrell</u> that make the decision inapposite.  These differences are as follows:

• At the time of executing the mortgage the surviving spouse, Mrs. Durrell was 56 and did not qualify for the HECM Reverse Mortgage, which is available only to homeowners age 62 and above.

• Here, plaintiff was 70 years old at the time she and her husband obtained the reverse mortgage in 2006

• To qualify for the HECM reverse mortgage Mr. and Mrs. Durrell conveyed their interest in the property by quit claim deed solely to Mr. Durrell who qualified for the mortgage because he was 66 years old.

• Here, plaintiff held absolute title to the home along with her husband as tenants by the entireties from the time they first purchased the property in August of 1974 until his death in February of 2014; and she continues to hold title today, as survivor

• Because Mrs. Durrell had deeded her interest in the property to her husband, but nevertheless still had a marital or dower future interest in the property, she was required to sign the mortgage and did so pursuant to HUD's Mortgage letter 97-15 which reflects that she was signing only because of and with respect to her "future interest" in the property.  The HUD Mortgage letter 97-15

• There is no indication that plaintiff here signed a HUD Mortgage letter 97-15

• Mrs. Durrell also signed a Non-Borrower Spouse Certification, in which she

8

acknowledged that "she understands that should her spouse predecease her or fails to occupy the home where she resides as her principal residence, and unless another means of repayment is obtained, the home where she resides may need to be sold to repay the reverse mortgage loan and she may be required to move from her residence"

• There is no indication that plaintiff here signed such a certification

In short, Durrell does not advance defendants' argument.

Defendants also cite McLaughlin v. Chase Home Finance, LLC, 519 F. App'x 904 (6th Cir. 2013). McLaughlin involved a standard mortgage, not a reverse mortgage. Both the husband and wife had signed the mortgage, but only the husband had signed the note. When the husband and wife stopped paying on the mortgage, Chase foreclosed. The Sixth Circuit upheld the foreclosure, even though the wife was not in default on the note, stating that "[Under Michigan's foreclosure] statute all that is required is that '[a] default in a condition of the mortgage [occur], by which the power to sell [becomes] operative."' MCL § 600.3204 (I)(a) . . . " Id. at 907. The McLaughlin's defaulted under the mortgage by failing to make required monthly payments. However, unlike the plaintiffs in McLaughlin, plaintiff alleges that there has been no default nor any other ground for acceleration under the mortgage because plaintiff is a surviving borrower who is residing at the property. Moreover, McLaughlin supports plaintiff's position that defendants' foreclosure rights come from the mortgage, not the note, inasmuch as McLaughlin said a court need to look only to the provisions of the mortgage, not the note, in determining whether or not the foreclosure was proper under state law.

Overall, defendants have not cited authority which renders plaintiff's claim implausible. To the contrary, based on the mortgage, plaintiff has plead a viable claim

for relief from the pending foreclosure.

### V.  Reverse Mortgage Litigation

Although not directly relevant to this action, the Court is compelled to note that there has been litigation over reverse mortgages and surviving spouses facing foreclosures.  This litigation indicates that the fate of a surviving spouse who resides at property which is subject to a reverse mortgage is complicated.  It also indicates that plaintiff's right to challenge the pending foreclosure cannot be resolved on the argument put forth in defendants' motion to dismiss.

In Bennett v. Donovan, 703 F.3d 582 (D.C. Cir. 2013), surviving spouses of reverse mortgage borrowers whose mortgage contracts had, like plaintiffs, been executed under a Home Equity Conversion insurance program sued HUD.  The plaintiffs were not listed on the mortgages or deeds.  When the spouses died, the lenders sought immediate repayment of the loan, claiming that the surviving spouses were not borrowers under the mortgages.  The district court dismissed the case for lack of standing.  The Court of Appeals for the District of Columbia reversed, finding plaintiffs had set forth a redressible injury and indicated that HUD should find a solution to protect surviving spouses.

The plaintiffs in Bennett were suing based on the following statutory provision under the Housing and Community Development Act of 1987:

> The Secretary may not insure a home equity conversion mortgage under this section unless such mortgage provides that the homeowner's obligation to satisfy the loan obligation is deferred until the homeowner's death, the sale of the home, or the occurrence of other events specified in regulations of the Secretary. **For purposes of this subsection, the term "homeowner" includes the spouse of a homeowner.**

10

12 U.S.C. § 1715z–20(j) (West 2014) (emphasis added).  HUD promulgated regulations to implement the Act, which include the following provision establishing when insured loans become due and payable:

> The mortgage shall state that the mortgage balance will be due and payable in full if a mortgagor dies and the property is not the principal residence of at least one surviving mortgagor, or a mortgagor conveys all of his or her title in the property and no other mortgagor retains title to the property.

24 C.F.R. § 206.27(c)(1).  Plaintiffs argued that HUD's promulgation of 24 C.F.R. § 206.27(c) was unlawful because insuring loans payable on the death of the last surviving borrower was inconsistent with 12 U.S.C. § 1715z–20(j), which protects "homeowners" from displacement and defines "homeowner" to include "spouse of the homeowner."  Plaintiffs contended that whether or not a spouse is also a borrower is irrelevant.

On remand, the district court granted summary judgment for plaintiffs, holding that HUD regulations violated the Housing and Community Development Act of 1987's requirement that reverse mortgage loan obligations must be deferred until the death of both the homeowner and the homeowner's spouse.[2]  Bennett v. Donovan, No. 11-0498 2013 WL 5424708, at *5 (D.D.C. Sept. 30, 2013).  The district court then remanded the case to HUD for further proceedings.

VI.  Conclusion

For the reasons stated above, defendants' motion to dismiss is DENIED.  The

---

[2]After Bennett was remanded, the AARP Foundation Litigation filed a second lawsuit in the District of Columbia, a putative class action on behalf of homeowners in a similar situation.  Plunkett, et al. v. Castro, No. 14-0326, 2014 WL 4243384 (D.D.C. Aug. 28, 2014).  Plunkett was consolidated with Bennett.

Clerk shall schedule a status conference to chart the future course of the case.

      SO ORDERED.

                        S/Avern Cohn
                        AVERN COHN
                        UNITED STATES DISTRICT JUDGE


Dated:  October 17, 2014
        Detroit, MI

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 17, 2014, by electronic and/or ordinary mail.

                        S/Sakne Chami
                        Case Manager, (313) 234-5160