UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STAMATIA KOSTOPOULOS, as survivor of herself and Konstantinos Kostopoulos,
Plaintiff,

-vs-

ONEWEST BANK, FSB and FINANCIAL FREEDOM ACQUISITION, LLC, f/k/a Financial Freedom Senior Funding Corporation,
Defendants.

No. 2:14-cv-12923-AC-MJH
Hon. Avern Cohn
Magistrate Michael J. Hluchaniuk

---

Ziyad Kased (P72237)
Attorney for Plaintiff
631 E. Big Beaver Rd., Ste. 101
Troy, MI 48083
(248) 680-7300
ziyadkased@gmail.com

Robert Hugh Ellis (P72320)
Dykema Gossett PLLC
Attorneys for Defendants
400 Renaissance Center
Detroit, MI 48243
(313) 568-5448
rellis@dykema.com

---

**MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure plaintiff Stamatia Kostopoulos, by her attorney Ziyad Kased, hereby moves the Court for Summary Judgment on her claim of wrongful foreclosure by the defendants in breach of the terms of the Reverse Mortgage involved in this case for the reason that there is no genuine dispute as to any material fact and plaintiff is entitled to judgment as a matter of law.

In accordance with LR 7.1 (a) on March 2, 2015 a conference was held between the attorneys for the parties in which plaintiff's counsel explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

WHEREFORE, plaintiff requests that this Court grant Summary Judgment in her favor with the following relief:

a) Order defendants to forthwith discontinue and terminate the foreclosure by advertisement which was previously commenced with respect to the plaintiff's Home Equity Conversion Mortgage under which plaintiff's residence, located at 31341 Frank Drive, Warren, Michigan, was pledged as security;

b) Order that the plaintiff's Home Equity Conversion Mortgage (HECM) be fully reinstated by defendants;

c) Order such other and additional relief as the Court may deem appropriate to insure that defendants do not again seek to *improperly* foreclose the subject mortgage and evict the plaintiff from her home so long as she is living and continues to reside in the subject property as her principal residence and otherwise continues to comply with the obligations of the borrower under the Home Equity Conversion Mortgage.

d)  Order that the defendants pay the reasonable attorney fees and costs so wrongfully incurred by the plaintiff for the necessity of having to institute this action and for *having to continue with its prosecution* in spite of the fact that the action of the defendants in instituting foreclosure on the reverse mortgage involved in this case was *clearly* wrongful and *entirely* improper.


Respectfully submitted,

Dated:  March 3, 2015                     /s/ Ziyad Kased
                                          Ziyad Kased (P72237)
                                          Attorney for Plaintiff
                                          631 E. Big Beaver Rd., Ste. 101
                                          Troy, MI 48083
                                          (248) 680-7300
                                          ziyadkased@gmail.com

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STAMATIA KOSTOPOULOS, as survivor of herself and Konstantinos Kostopoulos,
Plaintiff,

-vs-

ONEWEST BANK, FSB and FINANCIAL FREEDOM ACQUISITION, LLC, f/k/a Financial Freedom Senior Funding Corporation,
Defendants.

No. 2:14-cv-12923-AC-MJH
Hon. Avern Cohn
Magistrate Michael J. Hluchaniuk

---

Ziyad Kased (P72237)
Attorney for Plaintiff
631 E. Big Beaver Rd., Ste. 101
Troy, MI 48083
(248) 680-7300
ziyadkased@gmail.com

Robert Hugh Ellis (P72320)
Dykema Gossett PLLC
Attorneys for Defendants
400 Renaissance Center
Detroit, MI 48243
(313) 568-5448
rellis@dykema.com

---

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## STATEMENT OF ISSUES PRESENTED

1. Whether the plaintiff is a "surviving borrower" as that term is used and defined in the reverse mortgage at issue in this case?

2. Whether the defendants wrongfully instituted foreclosure by advertisement on the plaintiff's reverse mortgage despite the fact that there was neither default nor other grounds for accelerating the indebtedness under the terms of the reverse mortgage?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

Plaintiff submits that the controlling or most appropriate authority for this motion and indeed for this case as a whole is MCL 600.3204, which governs the right to foreclose a mortgage by advertisement in the State of Michigan, together with the reverse mortgage itself, which alone grants defendants' rights in the mortgaged property and which, along with MCL 600.3204, entirely govern defendants' right to foreclose the reverse mortgage at issue in this case.

## Introduction

Following the hearing on Defendant's Motion to Dismiss, held on October 8, 2014, after which the Court issued its Memorandum and Order Denying that motion and instructed the Clerk to "schedule a conference to chart the future course of the case", it was hoped, at least by the plaintiff and we believe by the Court as well, that the defendants would realize that their action in initiating foreclosure by advertisement on the reverse mortgage involved in this matter was, let us say, ill-conceived and should be abandoned. Unfortunately, that simply did not happen. Instead, defendants have doggedly refused to discontinue the foreclosure by advertisement proceedings which resulted in the commencement of this case and continue to aggressively persist in *wrongfully* pursuing foreclosure of the reverse mortgage on plaintiff's home. Nevertheless, as will be demonstrated below, since the only dispositive issues in this case were raised by the parties and resolved by the Court in connection with defendants' motion to dismiss, summary judgment is appropriate based on the findings already made by the Court in its Memorandum and Opinion Denying Defendant's Motion to Dismiss (Doc. 5).

## Statement of Facts

A concise recitation of the salient background facts involved in this case was furnished by the Court itself in its Memorandum and Order Denying Defendant's Motion to Dismiss, previously entered in this matter. Accordingly, the following

"Background" is taken directly from the Memorandum and Order of this Court entered on October 17, 2014:

> This case concerns real property located at 31341 Frank Drive, Warren Michigan 49093. Plaintiff and her husband, now deceased, have owned and occupied the property since 1974. On September 28, 2006, plaintiff's husband, Konnstantinos (sic) Kostopoulos, signed an adjustable rate note in connection with a home equity conversion mortgage loan ("HECM"), which is commonly known as a "reverse mortgage." The loan was insured by the Department of Housing and Urban Development (HUD). The lender is identified in the note and mortgage as "Financial Freedom Senior Funding Corporation, a Subsidiary of IndyMac Bank, FSB." Defendant OneWest Bank later acquired IndyMac's reverse mortgage portfolio. Under the terms of the loan and mortgage, the lender agreed to make advances to plaintiff and her husband in the maximum principal amount of $277,500.
>
> Plaintiff did not sign the note. Section 1 of the Note reads: "Borrower means each person signing at the end of this Note." However, plaintiff and her husband both signed the mortgage[1] and are identified as "Borrowers" on the mortgage.
>
> Although the obligation under the note was not due and payable until January 26, 2076, both the note and the mortgage contain similar provisions as to when the lender may accelerate the obligation and demand payment in full. The note says:

---

[Footnote from the original text]

[1] Plaintiff's name is handwritten on the facing page of the mortgage and below her signature on the last page of the mortgage. Plaintiff's name also did not appear on the original executed copy of the mortgage. Defendants contend that plaintiff's name was added after the execution and prior to recording. Defendants speculate that the title company added plaintiff's name. There is no dispute that plaintiff's signature is genuine or that she pledged her interest in the property as security for the note.

> **7. IMMEDIATE PAYMENT IN FULL**
> **(A) Death or Sale**
> Lender may require immediate payment in full of all outstanding principal and accrued interest if:
> (1) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower[.]
>
> **(B) Other Grounds.**
> Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:
> (1) The Property ceases to be the principal residence of a borrower for reasons other than death and the property is not the principal residence of at least one other Borrower.

The mortgage states:

> **9. Grounds for Acceleration of debt**
> **(a) Due and Payable.** Lender may require immediate payment in full of all sums secured by the Security Instrument if:
> (1) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower;
>
> **(b) Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval of the Secretary, if:
> (1) The Property ceases to be the principal residence of a Borrower for reasons other than death and the property is not the principal residence of at least one Borrower.

Section 20 of the mortgage provides:

> **Foreclosure Procedure. If Lender requires immediate payment in full under Paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. . . .**

Plaintiff's husband passed away in February, 2012. Plaintiff says she has continued to use the property as her principal residence since her husband's death and further says that she has paid all taxes and insurance on the property. These assertions are not challenged.

On May 15, 2014, plaintiff was notified by a law firm that they represented the lender. The letter stated that the "matter was referred to this office to foreclose the mortgage" and contained a demand of $171,767.73. A foreclosure sale was scheduled for June 20, 2014; it was adjourned until July 11, 2014. On July 2, 2014, plaintiff filed a complaint in state court challenging the foreclosure.

On July 25, 2014, defendants removed the case to federal court on the grounds of diversity jurisdiction.

The parties have twice stipulated to adjourn the sale. See Docs. 2, 9.

Defendants then filed the instant motion to dismiss.

As mentioned in the Introduction section of this brief, defendants' motion to dismiss was heard on October 8, 2014. At the conclusion of the hearing, the Court denied defendants' motion and thereafter embodied its ruling in a Memorandum and Order Denying Defendants' Motion to Dismiss which was entered on October 17, 2014. On November 14, 2014 defendants filed their answer and affirmative defenses. As will be demonstrated below, a review of the defendants' responsive pleadings reveals that there plainly is no genuine issue as to any material fact and the plaintiff is entitled to judgment as a matter of law.

# ARGUMENT

## I. Legal Standard

The legal standard to be applied by the Court in ruling on a motion for summary judgment under Fed. R. Civ. Proc. 56 was cogently articulated by the District Court for the Eastern District of Michigan in the recent case of *Annabel v Heyns*, No. 12-13590, 2014 WL 1746124 (ED Mich. April 30, 2014) where the Court said the following:

> Under Rule 56, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Hedrick v. Western Reserve Care Sys.,* 355 F.3d 444, 451 (6th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "A fact is material only if its resolution will affect the outcome of the lawsuit." *Hedrick,* 355 F.3d at 451–52 (citing *Anderson,* 477 U.S. at 248). In deciding a motion for summary judgment, the Court must view the evidence in a light most favorable to the non-movant as well as draw all reasonable inferences in the non-movant's favor. *See Sutherland v. Michigan Dep't of Treasury,* 344 F.3d 603, 613 (6th Cir. 2003); *Rodgers v. Banks,* 344 F.3d 587, 595 (6th Cir. 2003).
>
> "The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick,* 355 F.3d at 451 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). To meet this burden, the moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district

court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.,* 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *see also,* Fed. R. Civ. P. 56(e).

To create a genuine issue of material fact, however, the non-movant must do more than present some evidence on a disputed issue. As the Supreme Court has explained:

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [non-movant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Anderson,* 477 U.S. at 249–50. (citations omitted); *see Celotex Corp.,* 477 U.S. at 322–23; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, "[t]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland,* 344 F.3d at 613.

*Annabel v Heyns*, *supra*, at 3-4.

## II. Plaintiff Is Clearly Identified as a Borrower On The Mortgage Thereby Precluding Defendants from Foreclosing in this Case Inasmuch as There Has Been Neither Default Nor Other Grounds For Acceleration of the Mortgage Debt

From defendants' answer it is apparent that the *only* justification offered for commencing foreclosure on the reverse mortgage in this case is premised entirely on defendants' *completely unfounded* contention that the plaintiff, Stamatia Kostopoulos, was not "identified as a Borrower under any agreement" involved in this case and consequently upon the death of her husband, defendants were entitled to accelerate the mortgage indebtedness and foreclose the mortgage. *See* Defendants' Answer to Complaint at pp. 4, 5, 6, 7, 10. Yet a mere cursory examination of the reverse mortgage reveals that plaintiff's contention in this regard is simply and plainly wrong. *See* Reverse Mortgage, attached as **Exhibit A** to the Complaint *and* to this Motion. It is also completely at odds with specific findings made by this Court in its Memorandum and Order Denying Defendants' Motion to Dismiss (Doc. 5) entered on October 17, 2014. As reflected in the language quoted earlier from the Court's Memorandum and Order, the Court specifically noted that:

> . . . plaintiff and her husband both signed the mortgage and are identified as "Borrowers" on the mortgage.

Memorandum and Order Denying Defendants' Motion to Dismiss (Doc. 5) at 2.

Later, the Court goes on to emphasize the fact that plaintiff is a "borrower" under the mortgage and that it is the mortgage that gives the defendants the right to foreclose:

> Defendants argue that because plaintiff did not sign the note, she is not a "borrower" and therefore defendants have the right to foreclose because there is no "borrower" or "surviving borrower" residing at the property. . . .
>
> Defendants' argument does not carry the day. Although plaintiff did not sign the note, she did sign the mortgage. In seeking foreclosure, defendants concede they are acting pursuant to the authority granted by the mortgage, not the note. ***Plaintiff is a "borrower" under the mortgage. Defendants would have the Court ignore the mortgage altogether. However, it is the mortgage that gives the defendants the right to foreclose in the event of a default.*** Accepting defendants' argument, plaintiff would have been in a better position had she signed the note and therefore become personally liable for the debt. Following defendants' logic, plaintiff would then not be faced with foreclosure in this case. From defendants' perspective, because plaintiff did not sign the note and survived her husband, she is faced with losing her home. This simply cannot be the case.

*Id.* at 6-7 (Emphasis added).

Because the foreclosure instituted by the defendants can *only* be sustained if the plaintiff is found **not** to be a "borrower" under the reverse mortgage, the defendants now appear to be taking a new tact — particularly in light of what the Court said in its opinion on their motion to dismiss. Undaunted, by either the clear provisions and language of the mortgage itself, or by the Court's opinion, wherein

the Court twice noted that plaintiff was a "borrower" under the mortgage, defendants now take the position that the plaintiff is *nevertheless* "not identified as a borrower under *any* agreement", *including the mortgage*. The *only* thing that defendants *seem to suggest* as support this extremely dubious position is the fact that the plaintiff's name was apparently handwritten in on the first page and below her signature on the last page of the mortgage sometime *after the mortgage was signed but before it was recorded with the Register of Deeds* — as if this somehow changes everything, including the purpose for which plaintiff's signed the mortgage and her status as a "borrower" under it. *See* Answer to Complaint at ¶ 6. In reality, of course, any argument premised on so trivial and insignificant a point as this simply does not carry the day for defendants any more than defendants' attempt to ignore the mortgage altogether, as they did in their motion to dismiss.

To begin with, defendants' have acknowledged that plaintiff signed the mortgage and *did so to pledge her ownership interest in the property* as security. *See* Defendants' Brief in Support of Motion to Dismiss at 2; Defendants' Answer to Complaint ¶ 6. Under the *specific terms* of the reverse mortgage it is the "borrower" who pledges their interest in the property as security, *"with power of sale"*:

> . . . ***Borrower does hereby mortgage***, warrant, grant and convey to Lender *with power of sale*, the following described property located in Macomb County, Michigan:
>
> [Legal description of plaintiff's residence]

*See* **Exhibit A** — Reverse Mortgage at 1(emphasis added).

Under the reverse mortgage in this case the mortgagor is referred to as "borrower" instead of "mortgagor" throughout the mortgage. *Id.* Of course, to the defendants it is *essential* that plaintiff **be** *a mortgagor* — otherwise defendants' mortgage lien would be defective. They just don't want her to be a "borrower" under the mortgage — that would keep them from accelerating the mortgage debt and foreclosing, at least until she dies or defaults, which, of course, is the way reverse mortgages are *supposed* to work. Defendants simply cannot have it both ways. If, as defendants have asserted, plaintiff pledged her interest in the property under the mortgage, then *by definition* under the terms of that mortgage, she did so only as a "borrower", as that term is used and defined under the mortgage. Plaintiff submits that this *alone* should settle the issue as to the plaintiff's status as a "borrower" under the mortgage in this case. Nevertheless, plaintiff feels constrained to address what now appears to be the crux of defendants' position in this case following the denial of their motion to dismiss.

In answer to paragraph 6 of the complaint defendants refer to the document attached as Exhibit A to the complaint, which consists of a copy of the *recorded* mortgage *filed by the original mortgagor* with the Macomb County Register of Deeds, and state that "Defendants deny that the document attached as Exhibit A contains an *accurate copy* of the subject mortgage, *at the time of its execution by*

*the parties*." *See* Defendants' Answer to Plaintiff's Complaint at ¶ 6 (emphasis added). From defendants' prior filings in this matter it is apparent that the "accuracy" they are referring to here relates *only* to what we earlier described as being a trivial and insignificant matter: the fact that apparently the plaintiff's name was handwritten in on the first page and under her signature on the last page of the mortgage sometime *after it was signed but before it was recorded*. *See* Reply Brief in Support of Defendants' Motion to Dismiss at 4. In short, the defendants are suggesting that this case, which hinges on whether or not defendants had the *right to foreclose* by advertisement under Michigan law, should be governed by the *unrecorded* version of the mortgage rather than by the recorded version filed by the original mortgagor with the Register of Deeds. This rather novel suggestion can be quickly dispelled by looking to the statute which governs the right to foreclose by advertisement in the State of Michigan, MCL 600.3204. In pertinent part it provides as follows:

> Sec. 3204. (1) A party may foreclose a mortgage by advertisement if all of the following circumstances exist:
>
> (a) A default in a condition of the mortgage has occurred, by which the power to sell became operative.
>
> (c) ***The mortgage containing the power of sale has been properly recorded.***

*Id.* (Emphasis added).

From the statute it is abundantly clear that in order to foreclose by advertisement in the State of Michigan, ***the mortgage that is being foreclosed must be recorded.*** Ergo, it is the *recorded mortgage* and not any *unrecorded* version of the mortgage that governs the foreclosure and the rights of the parties with respect to the foreclosure of that mortgage under Michigan law. Consequently, the *unrecorded* version of the mortgage relied upon by defendants, has absolutely *no bearing* whatsoever on defendants right to foreclose this mortgage under the statute governing foreclosure by advertisement in the State of Michigan.

Beyond all this, the significance that defendants attach to the handwritten inclusion of the plaintiff's name on the mortgage is entirely fallacious. After a mortgage is signed it is *invariably* left with the lender/mortgagor to be submitted for recording. And as defendants themselves have suggested in previous filings with this Court, the plaintiff's name was likely handwritten in simply to *properly* finalize the signed mortgage document for recording. *See* Defendants' Reply Brief in Support of Motion to Dismiss at 4, Fn. 2. From this, Defendants go on to assert the absurd conclusion that "Plaintiff never signed any document identifying her as the 'Borrower'" *Id., see also,* Answer to Complaint at ¶ 6-9. Thus, according to defendants, plaintiff must have signed the mortgage in some capacity other than as a "Borrower". Again, a mere cursory examination of the mortgage document reveals defendants' position to be utterly ridiculous in that it ignores the simple

fact that the mortgage only has signature lines or blocks for two classifications of signers: "Witnesses" on the left side of the signature page and "Borrowers" on the right. Consequently, it follows that the only persons that were *intended* to sign the mortgage would be signing either as a witness (which are no longer required in Michigan) or as a borrower. Clearly, the plaintiff did not sign as a witness — her signature is on the right, with the word "Borrower" appearing *immediately* below; and defendants, themselves, have stated that the plaintiff signed the mortgage to pledge "her title interest" in the property as security for money to be advanced under the mortgage. *See* Defendants' Brief in Support of Motion to Dismiss at 1; Defendants' Reply Brief in Support of Motion to Dismiss at 1. That, in itself, makes her *a mortgagor* and hence a "Borrower" *by definition* under the mortgage.

III. The Affirmative Defenses Asserted by Defendants Are Entirely Without Merit

As Affirmative Defenses to plaintiff's complaint for wrongful foreclosure, defendants recite the following: Failure to state a claim upon which relief can be granted; plaintiff is not a "Borrower" under any applicable document and therefore there is no surviving borrower in the subject property; unclean hands and estoppel; plaintiff is seeking a windfall and to utilize the judicial process to rescind her prior agreements; statute of limitations and repose; waiver, laches, collateral estoppel, claim preclusion and res judicata; plaintiff's claims are barred in whole or in part

by the existence of relevant contracts; release. *See* Answer/Affirmative Defenses at pp. 10-11. Defendants make no effort whatsoever to state *any* facts which might support any of these defenses. Indeed, the Affirmative Defenses asserted by defendants are the very essence of what has been termed "boilerplate labels and conclusions." Recognizing that there is no actual factual basis for any of the defenses they raise, defendants preface this "laundry list" by saying that these defenses "may prove applicable after discovery and at trial." *See* Defendants' Answer to Complaint at 10. In short, defendants would like a fishing license. A license to needlessly explore, through pointless discovery, every imaginable defense that defendants could think of — even though defendants well know that, in point of fact, there is *absolutely* no reality to any of these defenses. As the defendants, themselves, repeatedly state in their responsive pleadings, the documents involved in this case "speak for themselves". *See* Answer to Complaint at pp. 5, 6. And indeed they do.

In addressing the legal standard applicable to a motion for summary judgment under Fed. R. Civ. P. 56 it was noted that "[t]he moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case." *Hedrick v. Western Reserve Care Sys.*, 355 F.3d 444, 451(6th Cir. 2004) (*citing Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). To meet this burden, the

moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting Matsushita Elec. *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *see also*, Fed. R. Civ. P. 56(e).

Based on the foregoing authorities, plaintiff has satisfied her burden. There is a complete dearth of evidence to support *any* of the defenses on the laundry list of defenses asserted by the defendants. Consequently, it is now incumbent upon the defendants to come forward with specific facts to show a triable issue in this case — of which plaintiff is confident there are none.

For the reasons set forth above, plaintiff requests that pursuant to Fed. R. Civ. P. 56 summary judgment be entered in her favor with the following relief:

a) Order defendants to forthwith discontinue and terminate the foreclosure by advertisement which was previously commenced with respect to the plaintiff's Home Equity Conversion Mortgage under which plaintiff's residence, located at 31341 Frank Drive, Warren, Michigan, was pledged as security;

b) Order that the plaintiff's Home Equity Conversion Mortgage (HECM) be fully reinstated by defendants;

c) Order such other and additional relief as the Court may deem appropriate to insure that defendants do not again seek to improperly foreclose the subject mortgage and evict the plaintiff from her home so long as she is living and continues to reside in the subject property as her principal residence and otherwise continues to comply with the obligations of the borrower under the Home Equity Conversion Mortgage;

d) Order that the defendants pay the reasonable attorney fees and costs so wrongfully incurred by the plaintiff for the necessity of having to institute this action and for *having to continue with its prosecution* in spite of the fact that the action of the defendants in instituting foreclosure on the reverse mortgage involved in this case was *clearly* wrongful and *entirely* improper.

Respectfully submitted,

Dated: March 3, 2015

/s/ Ziyad Kased
Ziyad Kased (P72237)
Attorney for Plaintiff
631 E. Big Beaver Rd., Ste. 101
Troy, MI 48083
(248) 680-7300
ziyadkased@gmail.com